# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYCURGAN, INC., dba ARES ARMOR,<br><br>                                Plaintiff,<br>vs.<br><br>RICHARD R. ROOD, JR., aka BRINK ROOD; BLOOD BROTHERS ARMORY, LLC; VISION ARMORY; and VISION ARMORY, LLC;,<br><br>                                Defendants. | CASE NO. 13cv2504 JM(NLS)<br><br>ORDER DENYING MOTION TO DISMISS FOR IMPROPER VENUE; DENYING MOTION TO TRANSFER FOR IMPROPER VENUE; GRANTING MOTION FOR CONVENIENCE TRANSFER |

Defendants Richard R. Rood, Jr., aka Brink Rood, Blood Brothers Armory, LLC ("BB Armory"), Vision Armory, and Vision Armory LLC ("VA) move to dismiss the complaint for improper venue, to transfer for improper venue to the United States District Court for the Northern District of Indiana, and for a convenience venue transfer to the Northern District of Indiana. Plaintiff Lycurgan, Inc., dba Ares Armor ("Ares"), opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds this matter appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion to dismiss for improper venue, denies the motion to transfer for improper venue, and grants the motion for a convenience transfer. The Clerk of Court is instructed to transfer this matter to the United States District Court for the Northern District of Indiana.

# BACKGROUND

On August 26, 2013, Plaintiff commenced this action in the Superior Court of California, County of San Diego, seeking damages in excess of $75,000. Plaintiff, a citizen of the State of California, alleges five state law causes of action against Defendants, citizens of the State of Indiana, for breach of contract, fraud - intentional representation, fraud - false promise, avoidance of intentionally fraudulent transfers, and avoidance of constructively fraudulent transfers. On October 17, 2013, Defendants removed this action based upon diversity of citizenship.

Ares commenced operations in Oceanside, California in 2010, manufacturing backpacks, slings and other textile-based equipment used by Marines and soldiers. (Compl. ¶12). In 2011 Plaintiff provided milled or cast aluminum metal parts to customers who desired to fabricate their own sport-utility firearms.

On February 7, 2013, Defendant Rood telephonically contacted Ares regarding the supply of various types of lower receivers. (Compl. ¶21). On February 13, 2013, Defendants provided Plaintiff with a sample receiver of the proposed "AR15 Cast 80%, 7075, anodized, +/- .002"." (Compl. ¶23). The sample receiver allegedly conformed to Plaintiff's specification. Id. In order to take advantage of an increasing demand for firearms and products, on February 21, 2013, Plaintiff placed a purchase order for some 20,000 AR15, 10,000 AR10, and 10,000 AR15 upper receivers. (Comp. ¶24). The purchased products were to be manufactured with 7075 aluminum, and tolerances of .002", and an eight-week delivery schedule. Plaintiff received a partial delivery after 12 weeks and found that the lower receivers allegedly were manufactured with inferior quality aluminum and did not comply with specified tolerances. (Compl. ¶¶27, 28).

Upon receipt of the initial delivery, Plaintiff provided notice of non-conformity to Defendants. On June 11, 2013, Dimitri Karras, the founder of Ares Armor, went to Indiana to meet with Defendant Rood, an alleged owner or manager of BB Armory and Vison Armory, to discuss the discrepancies with the ordered products. (Compl. ¶29). Defendant Rood represented that the discrepancies would be cured. Between May 31,

2013, and August 17, 2013, Plaintiff received an additional 12,800 allegedly non-conforming units. (Compl. ¶33). On August 15, 2013, dimensional testing allegedly confirmed that the products shipped were non-conforming. (Compl. ¶34). While Plaintiff filed the state court complaint on August 26, 2013, it was not served on Defendants until September 17, 2013.

On September 5, 2013, Defendant BB Armory commenced an action against Ares in the Northern District of Indiana alleging six counts for breach of contract, one count for defamation, and a single count for false advertising (the "Indiana Complaint"). The Indiana Complaint sets forth a different version of the allegations than Ares. BB Armory alleges that Ares refused to honor its contractual obligations including the payment, exclusivity, and minimum annual purchase provisions. (Def's Exh. A, ¶4). The Indiana Complaint alleges that the products provided to Ares possessed identical specifications to the sample accepted by Ares. With respect to the June 11, 2013 meeting with Mr. Karras in Indiana, BB Armory represents that Ares' concern about the product centered on whether the AR15 uppers would line up with the AR15 lowers. When shown that the uppers lined up with the lowers, Mr. Karras allegedly accepted the products and instructed BB Armory "to send them even if they were out of specification." (Id. ¶¶46, 47).

On July 30, 2013, when Ares allegedly asserted that the products were out of specification, BB Armory requested that Ares provide them a copy of the report indicating that "the Spec Samples were out of [Ares'] Specifications and that they may pose a potential safety hazard, but none were ever provided." (Id. ¶56). BB Armory then had an independent third-party conduct tests to ensure the safety of the products. No safety problems were revealed by the testing that included firing 2,000 rounds in two and a half minutes. (Id. ¶58). BB Armory further alleges that Ares, on or about May 30, 2013, began selling AR15 lowers made by other manufacturers in violation of the parties' exclusivity agreement. (Id. ¶66). The defamation claim allegedly arises from statements on Ares' website to the effect that BB Armory's AR15 lowers "were

out of specification and were not safe to be turned into and used as a firearm." (Id. ¶¶67, 68).

## DISCUSSION

**The Motion to Dismiss or, Alternatively, to Transfer for Improper Venue**

Defendants move to dismiss the complaint for improper venue or, alternatively, to transfer venue to the Northern District of Indiana pursuant to Federal Rule of Civil Procedure 12(b)(3). Defendants argue that venue, pursuant to the general venue statute, 28 U.S.C. §1391(b), is not appropriate in this district because all Defendants reside in Indiana, 28 U.S.C. §1391(b)(1), and a substantial part of the events giving rise to Plaintiff's claim occurred in California. These arguments are not persuasive.

In removal cases, 28 U.S.C. §1441(a) controls venue. Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953). Under this general removal statute, venue is proper in the district court "embracing the place where such action is pending." 28 U.S.C. §1441(a). As the San Diego Superior Court is located in the Southern District of California, venue is proper in this court.

**Convenience Transfer 28 U.S.C. §1404(a)**

Under 28 U.S.C. §1404(a), the court may transfer an action to any other district or division where it might have been brought "[f]or the convenience of the parties and witnesses and in the interest of justice." Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp, 820 F.Supp. 503, 506 (C.D. Cal. 1992). A convenience transfer under §1404(a) requires the court to assess a variety of factors and "involves subtle considerations and is best left to the discretion of the trial judge." Sparling v. Hoffman Construction, 864 F.2d 635, 639 (9th Cir. 1988). The court may consider the convenience of the parties and witnesses, and the promotion of judicial efficiency and economy in determining whether to transfer an action. Id. Private factors to be considered include the location where the operative events occurred, the convenience of the parties and non-party witnesses, the location of relevant evidence, the availability of compulsory process, and other practical considerations for the efficient

and cost-effective resolution of claims. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Courts also look to the so-called public factors such as relative docket congestion, the local public and jury pool's interest in the controversy, and issues relative to judicial economy. Id. at 508-09. Defendant has the burden of demonstrating that transfer is appropriate, see Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1981), and the court accords substantial weight to a plaintiff resident's choice of venue. Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985). However, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," plaintiff's choice "is entitled to only minimal consideration." Lou v. Belzerg, 834 F.2d 730, 739 (9th Cir. 1987).

The Ninth Circuit has also enumerated relevant factors, in a non-exclusive list, to be considered on a case-by-case basis:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The court discusses the considerations enumerated in Jones and then discusses relevant miscellaneous considerations.[1]

Negotiation and Execution of Agreements

The court concludes that this factor weighs in favor of Indiana as the most convenient forum. While the parties negotiated and executed the underlying agreements from their respective states of residency, a representative of Ares,

---

[1] There is no dispute that this action could have been commenced in the Northern District of Indiana because all Defendants reside in that district. See 28 U.S.C. §1391(b)(1).

1  Mr. Karras, traveled to Indiana to discuss the products' specifications. (Compl. ¶29,
2  Indiana Complaint ¶46). Further, while present in Indiana, not only did Mr. Karras and
3  Mr. Rood discuss the products' specifications but they also conducted a test to ensure
4  compatibility of the AR15 uppers to the lowers. Mr. Karras was allegedly satisfied
5  with the test, and agreed to accept the products.

6        Governing Law

7        The court concludes that this factor neither favors one party nor the other. The
8  agreements between the parties did not contain either a choice or law or forum
9  selection provision. Thus, the governing law requires a choice of law analysis which
10 neither party discusses; and the court declines to engage in such an analysis sua sponte.
11 Further, it appears that the Uniform Commercial Code ("UCC") would provide the
12 legal framework for resolving the issues raised by the parties as the dispute involves
13 the sale of goods between merchants. The UCC applies in both jurisdictions.

14       Plaintiff's Choice of Forum

15       The court concludes that this factor favors Ares because a plaintiff's choice of
16 forum is accorded substantial weight. Securities Investor Protection Corp., 764 F.2d
17 at 1317. Cir. 1985).

18       The Parties' Contacts with the Forum and Plaintiff's Contacts with Its Claims

19       The court concludes that this consideration weighs in favor of Indiana as the
20 most convenient location. While the agreements were negotiated and executed while
21 the parties were in their respective states, Plaintiff's contacts with Indiana appear
22 stronger than Defendants' contacts with California. Mr. Karras traveled from
23 California to Indiana to discuss the products' specifications and negotiated with BB
24 Armory concerning specifications of the goods and future delivery schedules.

25       Plaintiff also argues that this court has personal jurisdiction over all Defendants
26 despite the limited, if non-existing, contacts with the State of California by Vision
27 Armory and VA. While personal jurisdiction falls outside the scope of the present
28 motion, Plaintiff's bare allegation that Vision Armory is the alter ego of BB Armory

appears to run afoul of pleading requirements set forth in <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief).  Under these circumstances the court notes that it may not possess the authority to exercise personal jurisdiction over all the Defendants.  However, personal jurisdiction in Indiana appears proper as to all Defendants.

<u>The Costs of Litigation in the Two Forums</u>

The court concludes that this factor is neutral at best as neither party identifies the comparative costs of litigating in the respective forums.

<u>Availability of Compulsory Process</u>

The court concludes that this factor is neutral at best as both parties identify potential witnesses within their respective State. The court notes that the Federal Rules of Civil Procedure and the Federal Rules of Evidence provide the procedural mechanism to introduce such testimony at the time of trial.  Further, the parties are capable of coordinating discovery in such a manner to achieve an efficient and cost-effective result whether this action proceeds in this court or in Indiana.

Plaintiff also argues that the individuals and companies that performed the analysis of the goods are located in California.  This argument is entitled to little weight.  The residence of potential experts is not determinative. See <u>Williams v. Bowman</u>, 157 F.Supp.2d 1103, 1108 (N.D. Cal.2001) (the convenience of expert witnesses is given little weight).

<u>Miscellaneous Considerations</u>

The court concludes that the most important consideration, the convenience of non-party witnesses and experts, favors transfer to Indiana.  The declaration of Mr. Rood identifies two potential witnesses - Josh Mulhern of Bristol, Indiana, who is anticipated to testify about the setup of the machining for BB Armory, and Justin Howard of Atlanta, Georgia, who is anticipated to testify about his own role in providing a quote for the manufacture of BB Armory's parts. Quick Parts 3-D was the

original manufacturer of BB Armory's parts. (Rood Decl. ¶22). Further, virtually all of the parts manufactured for Ares have been returned to BB Armory and are located in Indiana. (Id. ¶23). The goods were also shipped FOB from BB Armory's Indiana facility, thus indicating that the risk of loss for the goods transferred to Plaintiff at that time while the goods were still located in Indiana. (Id. ¶24). Plaintiff, on the other hand, does not identify any percipient witness other that its employees and experts. See Williams, 157 F.Supp.2d at 1108 (the convenience of expert witnesses is given little weight).

Finally, the court notes that Ares filed the complaint on August 26, 2013 and served Defendants on September 17, 2013. In this interim period, on September 5, Defendants commenced the Indiana action and promptly served Ares. The mere fact that Ares raced to the courthouse to file a complaint, but delayed service of the complaint until after Ares was served with process in the Indiana action, does not outweigh the other factors favoring a convenience transfer. Lastly, the transfer of this action will facilitate coordination or consolidation with the Indiana Action to the extent necessary for efficient administration of the cases and promote the fair and efficient resolution of parties' claims.

In sum, the court denies the motion to dismiss for improper venue, denies the motion to transfer for improper venue, and grants the motion for a convenience transfer. The Clerk of Court is instructed to transfer this matter to the United States District Court for the Northern District of Indiana.

**IT IS SO ORDERED.**

DATED: December 2, 2013

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties